**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MATTHEW J. MEADE, | ) Case No.: 1:20-cv-00519-BAM |
| Plaintiff, | ) |
| v. | ) **ORDER REGARDING SOCIAL SECURITY COMPLAINT** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1] | ) |
| Defendant. | ) |

## **INTRODUCTION**

Plaintiff Matthew J. Meade ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2]

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

[2] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). (Docs. 6, 9, 18.)

1

Having considered the briefing and record in this matter, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards.  Accordingly, this Court affirms the agency's determination to deny benefits.

**FACTS AND PRIOR PROCEEDINGS**

Plaintiff filed applications for disability insurance benefits and supplemental security income on November 3, 2016.  AR 191-203.[3] Plaintiff alleged that he became disabled on February 28, 2016, due to stroke, heart problems, seizures, high blood pressure, memory problems, and diabetes. AR 75. Plaintiff's applications were denied initially and on reconsideration. AR 123-27, 134-38. Subsequently, Plaintiff requested a hearing before an ALJ. ALJ E. Alis held a hearing on March 7, 2019. AR 32-60. ALJ Alis issued an order denying benefits on April 1, 2019. AR 12-31. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-6. This appeal followed.

**Hearing Testimony**

The ALJ held a hearing on March 7, 2019, in Oakland, California.  Plaintiff appeared at the hearing with his attorney, Robert Ishikawa. AR 32. Susan Foster, an impartial vocational expert, also appeared and testified. AR 43.

In response to questions from the ALJ, Plaintiff testified that he last worked three years ago as security, bodyguard, and bouncer. AR 36. Plaintiff resigned from his last job to help care for his mother. AR 36. Plaintiff does the cleaning and grocery shopping for his mother. AR 36. Plaintiff testified that he has tried to look for other similar jobs but finds it difficult as he cannot drive due to vision loss cause by a stroke. AR 37. Plaintiff further testified that he believes he can still work as a bouncer. AR 38. He was driven to the hearing. AR 38.

In response to questions from her counsel, Plaintiff testified that he does not have a driver's license because he has seizures, which are currently controlled by medication. AR 39. Plaintiff also testified that he has heart problems and got a bypass graft in March 2016. AR 39. Prior to getting the

---

[3]     References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

bypass graft, Plaintiff suffered from shortness of breath and fatigue. AR 39. Following surgery, Plaintiff's heart problems are better, but he still gets shortness of breath and chest pains once every couple of months. AR 39. Plaintiff also testified that he gets lightheaded or dizzy for several seconds at a time about two or three times a month. AR 40-41. However, Plaintiff's fatigue did not improve after surgery. AR 41. The fatigue causes Plaintiff to rest twice a day, anywhere from a half hour to a couple of hours at a time, before going to bed. AR 41.

Just prior to the hearing, Plaintiff had surgery to fuse his C3 and C7 vertebrae. AR 41-42. Plaintiff testified that he has reported numbness and tingling in his arm to his doctors. AR 42. Plaintiff further testified that even after surgery he still has numbness that starts in the back of his head and continues throughout his body. AR 43. Plaintiff's doctors attributed his numbness to his 2009 stroke. AR 43. Plaintiff further testified that the numbness and loss of strength is worse on his left side but still prominent on his right. AR 44. Plaintiff also testified that prior to his surgery he would have only bee able to stand for a half hour to an hour. AR 45. Plaintiff further testified that the pain he felt prior to surgery remains the same except a small spot on the back of his neck. AR 45. Plaintiff testified that he has trouble manipulating objects with his left hand due to numbness. AR 45-46.

As to his daily activities, Plaintiff testified that when he moved in with his mother, he stopped going to the gym, cooking, and exercising. AR 46. Now Plaintiff's daily activities consist of getting up, having breakfast, do some artwork on the computer, and then if he has somewhere to go, he returns home quickly. AR 47. Plaintiff further testified that he is not able to focus or concentrate for thirty minutes at a time. AR 47.

Plaintiff testified that he has been seeking Dr. Matthew Kim for about a year for the pain in his cervical spine. AR 47.

In response to additional questioning from the ALJ, Plaintiff testified that even with his strength issues he does the vacuuming, takes out the trash, does laundry, and cleans his own bathroom. AR 48. Plaintiff further testified that he stopped cooking after his stroke because he could not remember certain techniques and recipes which would lead to frustration. AR 48-49. However, Plaintiff can still chop vegetables, cut meat, and do prep work. AR 49. Plaintiff further testified that his doctors suggested he continue exercising. AR 49. When Plaintiff did exercise, he would start on

the stationary bike, then walk on the treadmill, and then light lifting using machines with no more than ten pounds. AR 49-50. Plaintiff was able to do these exercises after his stroke. AR 50-51.

Plaintiff further testified that he does artwork on the computer using a paint program. AR 51. Plaintiff does this for a couple hours a day. AR 51. Plaintiff uses his right hand to operate the mouse which is more like a trackpad with a ball. AR 52.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE. The VE categorized Plaintiff's past work as bouncer. AR 53. The ALJ also asked the VE hypotheticals. For the first hypothetical, the ALJ asked the VE to assume a person of the same age, education and work background that could perform work across any exertional level, however, could not operate a motor vehicle while on the job, could not work near large bodies of water, at unprotected heights or around dangerous mechanical parts, could not operate power tools, was limited to simple and routine tasks and making simple work related decisions, could occasionally interact with coworkers, but not in a tandem team or group setting, could occasionally have brief and superficial interactions with the public, few changes, if any, in the day-to-day work setting or in the tools and work processes used to accomplish work. AR 53-54. The VE testified that such an individual could not perform Plaintiff's past work as a bouncer. AR 54. The VE further testified that there were other jobs in the national economy that Plaintiff could perform including, kitchen helper, laundry laborer, and janitor, all at the medium exertion level. AR 55.

For the second hypothetical, the ALJ asked the VE to consider the individual in hypothetical one except this individual would be limited to work at the light exertional level, so the individual would be limited to lift or carry 20 pounds occasionally, 10 pounds frequently, could stand, walk, or sit each for six hours out of an eight-hour workday. AR 56. The VE testified that there were jobs in the national economy that Plaintiff could perform including, garment sorter, folder, and small parts assembler. AR 56.

For the third hypothetical, the ALJ asked the VE to consider the individual in hypothetical two except this individual would be limited to standing and walking for a combined total of four hours out of an eight-hour workday and sit for a total of four hours out of an eight-hour workday. AR 56. The VE testified that there were jobs in the national economy that Plaintiff could perform including,

garment sorter, folder, and small parts assembler, except small parts assembler would be reduced by 25%. AR 57. The VE explained the reduction for small parts assembler was attributed to the sit/stand limitations. AR 57.

Finally, the ALJ asked the VE to consider all the hypotheticals and asked what the maximum tolerance employers would have for off task behavior after which point the individual would no longer be employable. AR 57. The VE testified that employers will not tolerate off task behavior for greater than 10% of the workday exclusive of lunch and breaks. AR 57. The VE testified that this opinion was based on experience as it is not addressed in the DOT. AR 57.

Following the ALJ's questions, Plaintiff's attorney asked the VE to consider hypothetical two, but the individual could only occasionally reach, grasp, finger, and handle. AR 58. The VE testified that such an individual could not perform any jobs in the national economy. AR 58.

The ALJ then asked the VE to consider the individual in Counsel's hypothetical except the individual could frequently reach and handle bilaterally. AR 58-59. The VE testified that such an individual could perform the jobs of garment sorter and folder but not small parts assembler, however, they could perform the job of bench assembler. AR 59.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 16-26. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 28, 2016, the alleged onset date. AR 17. The ALJ identified the following severe impairments: epilepsy with history of seizures; history of cerebrovascular accident; degenerative disc disease of the cervical spine status post laminectomy; neurocognitive disorder; and depressive disorder. AR 17-18. The ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments. AR 24-26.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he is limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently; sitting, standing, and walking for up to six hours each in an eight-hour workday; no operation of motor vehicles; no work near large bodies of water, unprotected heights, dangerous moving mechanical parts, or use of power tools; he is further limited to performing simple, routine tasks involving simple work-related decisions; occasional interaction with coworkers, but not in a tandem, team, or group setting; occasional interaction with supervisors; occasional, brief, superficial interaction with the public; and a stable environment defined as few changes, if any in the day-to-day work setting and in the tools and/or work processes used to accomplish tasks. AR 20-24. With this RFC, the ALJ found that Plaintiff could not perform any past relevant work, but could perform other jobs in the national economy, such as garment sorter, folder, and small parts assembler. AR 24-26. The ALJ therefore concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from February 28, 2016, through the date of this decision. AR 26.

## **SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards,

and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

### REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

### DISCUSSION[4]

Plaintiff contends that the ALJ committed harmful error by failing to defer and afford "greatest weight" to the opinions of treating physician Dr. Kim. Plaintiff also contends that the ALJ committed harmful error by failing to provide clear and convincing reasons for rejecting Plaintiff's subjective complaints. Plaintiff further contends that the ALJ committed harmful error by failing to identify and resolve the conflict between the DOT and VE testimony per SSR 00-4p.

**A. The ALJ Did Not Err in Evaluating the Opinion Evidence from Treating Source Dr. Kim.**

Plaintiff first argues that the ALJ failed to properly evaluate the opinion of his treating provider, Matthew Kim, MD. Specifically, Plaintiff contends that the ALJ failed to defer to and afford "greatest weight" to the well-supported opinion of Dr. Kim and failed to provide specific and legitimate reasons for doing so. (Doc. No. 21 at 10.) The Court disagrees.

---

[4] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

On July 25, 2018, Dr. Kim completed a medical source statement. AR 538-41. Dr. Kim diagnosed Plaintiff with cervical spinal stenosis. AR 538. Dr. Kim also opined that could occasionally lift and carry more than 20 pounds and could constantly lift and carry up to 10 pounds. AR 538-39. Dr. Kim also opined that Plaintiff could walk one city block or more without rest or severe pain, on rough or uneven ground, could not climb steps without use of a handrail at a reasonable pace, had no problems with balance when ambulating, and had problems with stooping, crouching, and bending. AR 539. Dr. Kim further opined that Plaintiff would need to lie down/recline during the day due to pain for eight-hours in an eight-hour workday, would need to sit for eight-hours in a workday, could stand/walk for four hours in an eight-hour workday, and would need unscheduled breaks. AR 539-40. Additionally, Dr. Kim opined that Plaintiff could only reach with his left arm 60% of the time, could not push/pull arm or leg controls from a seated position for six or more hours, could not climb ladders, scaffolds, or ropes, would frequently experience pain and stress severe enough to interfere with attention and concentration, would be 90% efficient in performing a job eight-hours a day, five-days a week, and would be unable to obtain and retain work in a competitive work environment. AR 340-41.

On February 5, 2019, Dr. Kim completed a second medical source statement. AR 588-91. Dr. Kim opined that Plaintiff could lift 10 pounds or less constantly, and 15 pounds or more occasionally, could carry 5 pounds or less constantly, 10 pounds frequently, and 15 or more pounds occasionally. AR 588-89. Dr. Kim also opined that Plaintiff could walk one or more city blocks without rest or severe pain, on rough or uneven ground, could not climb steps without the use of a handrail at a reasonable pace, would have problems with stooping, crouching, and bending, would need to lie down or recline during the day due to pain for eight hours during an eight-hour workday, would need to sit for four hours in an eight-hour workday, could walk/stand for four hours in an eight-hour workday, and would need unscheduled breaks throughout the day. AR 589. Dr. Kim further opined that Plaintiff could reach overhead with his let arm 60% of an eight-hour workday, could not push and pull arm or leg controls from a seated position for six or more hours in an eight-hour workday, could not climb ladders, scaffolds, or ropes, would frequently experience pain or stress severe enough to interfere with attention and concentration needed to perform work tasks, would be 90% efficient in performing a job

8

eight-hours a day, five-days a week, and would be unable to obtain and retain work in a competitive work environment. AR 590-91.

Cases in this circuit identify three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, more weight should be given to the opinion of a treating source than to the opinions of doctors who do not treat the claimant. *Id.* Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Id.* If the treating physician's opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons supported by substantial evidence in the record to reject this opinion. *Id.*

An ALJ may meet the burden of identifying specific and legitimate reasons for discounting a medical opinion by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir.1986)) (superseded by statute on other grounds). When rejecting a medical opinion, the adjudicator is not required to recite specific words. *Magallanes*, 881 F.2d at 755 (reasoning that an incantation of magic words to reject physician's opinion is not required). The Ninth Circuit has held that a reviewing court can properly read the adjudicator's summary of the evidence and findings and draw specific and legitimate inferences therefrom. *Id.* ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion.")

The ALJ met the standard identified in *Magallanes*. The Court is able to adequately determine the basis for the ALJ's decision and finds that the particular format that the ALJ utilized when determining the RFC does not constitute reversible error. The ALJ set out a summary of the facts and evidence in support of his findings. Though the ALJ did not specifically identify what portions of Dr. Kim's opinion were included in the RFC, the format used to analyze the facts and evidence was sufficient.

The ALJ assigned Dr. Kim's medical source statements "partial weight" finding the statements were internally inconsistent and the opinions were unsupported by the evidence of record and unaccompanied by any objective findings that corroborate the limitations. AR 23-24. The ALJ further found that in his testimony, Plaintiff did not report the level of restrictions in Dr. Kim's opinion on the need to lie down or recline. AR 24.

According to the record, Plaintiff received consultative exam from Dr. Siekerkotte on February 2, 2017. AR 492-96. Dr. Siekerkotte noted that Plaintiff cares for his personal needs, is able to sweep, mop, vacuum, do dishes, laundry, shopping with a ride, and cook, does not drive, and mostly watches tv. AR 493. Dr. Siekerkotte observed that Plaintiff had negative bilateral straight leg tests in seated and supine positions, no spasms, tenderness, crepitus, effusion, deformities, or trigger pains, was 5/5 for grip strength, biceps, shoulders, quadriceps, dorsiflexion, plantar flexion bilaterally, and had decreased sensation in the right back to touch. AR 495. Dr. Siekerkotte opined that Plaintiff had no limitations in standing, walking, and sitting, needed no ambulatory device, had no limitations in lifting and carrying, no manipulative limitations, had some limitations for working around heavy machinery based on decreased peripheral vision which appeared to be mild and due to seizures. AR 495-96.

Plaintiff also received consultative exams from state agency examiners Dr. Williams and Dr. Epstein. AR 68-69, 99-100. Dr. Williams opined that Plaintiff had no exertional limitations, no manipulative limitations, and no environmental limitations except to avoid concentrated exposure to hazards. AR 68-69. Dr. Epstien had the same opinion but also noted seizure precautions which included no driving on the job, no work near large bodies of water, no unprotected heights, and no working with dangerous machinery or power tools. AR 99-100. The ALJ assigned partial weight to Dr. Siekerkotte's opinion as the record reflects greater limitations then those in opinion. AR 23. The ALJ assigned Dr. Epstein's opinion great weight as the assessment of Plaintiff's environmental limitations was supported by the record as a whole. AR 23.

Plaintiff testified that he was able to clean, grocery shop, believed he could work as a bouncer, that his seizures were controlled by medication. AR 36-40. Plaintiff further testified that he required rest for thirty minutes to two hours twice a day and experiences numbness and tingling in his arms. AR 40-42. Plaintiff also testified that he has stopped going to the gym, cooking, and exercising, and

can work on a computer for up to two hours at a time. AR 46-47. Plaintiff's subjective complaints were not wholly consistent with either opinion, but more of a middle ground. Plaintiff's testimony was consistent with Dr. Kim's assessment of needing rest throughout the day and having trouble concentrating. However, it was inconsistent with Dr. Kim's opinion that Plaintiff cannot work a full day, would need to recline or lie down for eight hours. Plaintiff's complaints were consistent with Dr. Epstein's opinion that there were environmental limitations due to Plaintiff's history with seizures. However, the testimony was inconsistent with Dr. Epstein and Dr. Williams' opinions that Plaintiff had no limitations in lifting/carrying, walking/standing, and manipulation.

As noted, Dr. Kim opined greater limitations for Plaintiff in his ability to lift, carry, walk, stand, sit, and concentrate at work. The ALJ also noted that Dr. Kim's medical source statements were internally inconsistent. Dr. Kim opined both that Plaintiff would need to lie down or recline for eight hours in an eight-hour workday and that Plaintiff could sit for up to four hours in an eight-hour work day. Further, Dr. Kim opined that Plaintiff had no limitations walking, but still opined Plaintiff would be unable to stand or walk for any amount of time in an eight-hour workday. The opinion was internally inconsistent and was not reflected in Plaintiff's own assessment of his abilities. Accordingly, the Court finds that the ALJ provided sufficiently specific reasons for discounting the opinion of Dr. Kim.

### B. Plaintiff's Subjective Complaints

Plaintiff initially contends that the ALJ committed harmful error by failing to provide clear and convincing reasons for rejecting his symptom evidence. (Doc. No. 21 at 17.)

In deciding whether to accept a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but discounted his statements concerning the intensity, persistence and limiting effects of those symptoms finding Plaintiff's complaints partially consistent with the evidence of record. AR 23. The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

The Court finds that the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.  First, the ALJ found that despite Plaintiff's alleged impairments, he has the ability to help care for his mother, does laundry, cleans, prepares meals on a daily basis, and can care for his personal needs. AR 23. An ALJ may properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability is alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms"), *superseded by regulation on other grounds*.  The ALJ cited Plaintiff's admitted activities of daily living, including his abilities to care for both himself and his mother. AR 23. Plaintiff testified that he required rest for thirty minutes to two hours twice a day, experiences numbness and tingling in his arms, has trouble concentrating for extended periods of time, and has stopped going to the gym, cooking, and exercising. AR 40-42, 46-47. Yet, Plaintiff also testified he can work on a computer for up to two hours at a time, does cleaning, shopping, and believes he can still work as a bouncer. AR 40-47. Plaintiff's testimony is itself inconsistent.

The ALJ reasonably considered that the physical and mental capabilities for these tasks and the social interactions replicated capabilities needed to obtain and maintain employment. AR 23. The Court therefore finds that the ALJ's assessment of Plaintiff's subjective complaints is free of reversible error.

**C. The ALJ did not fail to identify and resolve conflict between the DOT and VE testimony.**

Plaintiff next argues that the ALJ's finding that Plaintiff was limited to simple, routine tasks involving work-related decisions is in conflict with the requirements of the representative jobs of garment sorter, folder, and small parts assembler suggested by the VE. (Doc. No. 21 at 22.)

According to the DOT, these jobs are classified at a Reasoning Level 2, which requires a capacity for "[a]pply[ing] commonsense understanding to carry out detailed . . . written or oral instructions." (Doc. No. 26 at 17.)  Plaintiff contends that his RFC and the definition of Reasoning Level 2 occupations are therefore in conflict because the ALJ found Plaintiff could perform only simple, routine tasks involving simple work-related decisions. (Doc. No. 21 at 22.) The Commissioner, in turn, argues that there is no apparent conflict between Reasoning Level 2 work and Plaintiff's limitation to simple, routine tasks. (Doc. No. 26 at 17-18.)

At step five, the ALJ is required to "identify specific jobs existing in substantial numbers in the national economy that [the] claimant can perform despite her identified limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). The ALJ first assesses the claimant's RFC, which is the most the claimant can do despite his physical and mental limitations, and then considers what potential jobs the claimant can perform given his RFC. 20 C.F.R. §§ 404.1545(a)(1), 404.1566, 416.945(a)(1); 416.966.  In making this determination, the ALJ "will take administrative notice of 'reliable job information' available from various publications," including the Dictionary of Occupational Titles ("DOT") and will also consider the testimony of VEs.  SSR 00-4P, 2000 WL 1898704, at *2 (Dec. 4, 2000) (citing 20 C.F.R. §§ 404.1566(d)-(e), 416.966(d)-(e)).

Generally, occupational evidence provided by a VE should be consistent with the occupational information supplied by the DOT. *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). "[T]he [ALJ] has an affirmative responsibility to ask about any possible conflict between that VE[ ] evidence and information provided in the DOT."  SSR 00-4P, 2000 WL 1898704, at *4 (S.S.A. Dec. 4, 2000); *Massachi,* 486 F.3d at 1152-53.  "When there is an apparent unresolved conflict between the VE[ ] evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE[ ] evidence to support" a disability determination.  SSR 00-4P, 2000 WL 1898704, at *2. The ALJ must explain the reconciliation in his or her decision. *Id.* at *4. This process "ensure[s] that the record is clear as to why an ALJ relied on a vocational expert's testimony, particularly in cases where the expert's testimony conflicts with the [DOT]." *Massachi,* 486 F.3d at 1153. An ALJ's failure to ask the VE whether his or her testimony conflicts with the DOT and, if so, whether there is a reasonable explanation for the conflict is a procedural error. *Id.* at 1153-1154.

1  Here, the ALJ's decision noted that he "determined that the [VE's] testimony was consistent
2  with the information contained in the [DOT]. AR 25. Further, the ALJ asked the VE at the hearing
3  whether her testimony conflicted with the DOT. AR 53-58. The Court finds that any error was
4  harmless because there is no conflict between the RFC finding that Plaintiff was limited to simple,
5  routine work-related decisions and Reasoning Level 2's requirement that an individual be able to
6  apply "detailed but uninvolved written or oral instructions."

7  The DOT identifies duties for jobs and abilities necessary to perform those jobs, including a
8  General Educational Development" ("GED") definition component which "embraces those aspects of
9  education (formal and informal) which are required of the worker for satisfactory job performance."
10  *Grigsby v. Astrue,* 2010 WL 309013, *2 (C.D. Cal. Jan. 22, 2010). The GED component is comprised
11  of discrete scales, including a scale for "Reasoning Development" ranging from Level 1 to Level
12  6. *Id.* Level 2 is defined as follows:

> Apply commonsense understanding to carry out detailed but uninvolved
> written or oral instructions. Deal with problems involving a few concrete
> variables in or from standardized situations.

*Id.* (citing DOT, App'x C).

In this case, the ALJ adopted the VE's finding that Plaintiff could perform the occupations of garment sorter, folder, and small parts assembler, all of which, according to the DOT, require a Reasoning Level of 2. AR 32. DOT § 222.687-014 [garment sorter]; DOT § 369.687-018 [folder]; DOT § 739.687-030 [small parts assembler]. Plaintiff's argument ignores the fact that "no strict match exists between 'detailed instructions,' as listed in Reasoning [Level] 2, and 'detailed' tasks, as defined in an RFC." *Pugh v. Comm'r of Soc. Sec.,* 2019 WL 3936192, at *4 (E.D. Cal. Aug. 20, 2019). The ALJ's use of the term "detailed" is not determinative and the RFC must instead be read holistically. *See Tai Truong v. Saul,* 2019 WL 3288938, at *5 (S.D. Cal. July 19, 2019).

*Meissl v. Barnhart,* 403 F.Supp.2d 981, (C.D. Cal. 2005) is illustrative on this point.[5] *Meissl*

---

[5] Courts in this District have consistently relied upon *Meissl* as persuasive authority when addressing conflicts involving reasoning levels. *See, e.g., Moua v. Astrue,* 2009 WL 997104, at *12-13 (E.D. Cal. April 14, 2009) ("[T]his court prefers to follow the well developed reasoning of the Central District in [*Meissl*]."); *Barrios v. Astrue,* 2010 WL 3825684, at *8 (E.D. Cal. Sept. 28, 2010) ("[*Meissl*] has been consistently relied on by this very Court –for over two years—when addressing conflicts involving reasoning levels."); *Eckard v. Astrue,* 2012 WL 669895, at *8 (E.D. Cal. Feb.

held that a limitation to simple and repetitive tasks was consistent with Reasoning Level 2 positions. *Meissl,* 403 F.Supp.2d at 984-85. In reaching this holding, the court explained that while the Social Security regulations provide only two categories of abilities with regard to understanding and remembering instructions— "short and simple" and "detailed" or "complex"—the DOT has six gradations for measuring that ability. *Id.* at 984. Thus,

> to equate the Social Security regulations['] use of the term "simple" with its use in the DOT would necessarily mean that all jobs with a reasoning level of two or higher are encapsulated within the regulations' use of the word "detail." Such a "blunderbuss" approach is not in keeping with the finely calibrated nature in which the DOT measures a job's simplicity.

*Id.* The *Meissl* court rejected the "neat, one-to-one parallel" that the claimant attempted to draw between the DOT's use of the word "detailed" and the Social Security regulations' use of the word "detailed." *Id.* at 983-84. Instead, the court reasoned that DOT's use of the term "uninvolved" qualified the term "detailed" in defining Reasoning Level 2 and refuted the attempt to equate identical meanings between the two. *Id.* at 984

As noted in *Meissl,* in the definition of Reasoning Level 2, the word "detailed" is modified with the words "but uninvolved." *Meissl,* 403 F.Supp.2d at 984. District courts in this circuit have employed dictionary definitions to determine the meaning of "uninvolved" in the context of Reasoning Level 2, noting that "involved" means "complex" and concluding that "detailed, but uninvolved" instructions consequently consist of non-complex, simple, uncomplicated instructions that do not require a high level of reasoning. *See Tai Truong,* 2019 WL 3288938, at *6 ("This Court agrees that 'uninvolved' means 'non-complex' or 'simple.'"); *Patton v. Astrue,* 2013 WL 70590, at *1 (D. Or. Feb. 25, 2013) ("A task that includes 'detailed, but uninvolved' instructions may consist of a number of steps, none of which are complex."); *Flaherty v. Halter*, 182 F. Supp.2d 824, 850–51 (D. Minn. 2001) ("Although the DOT definition does state that the job requires the understanding to carry out

---

29, 2012) ("The Court sees no reason to depart from the continued acceptance of *Meissl.*"); *Gonzales v. Astrue,* 2012 WL 14002, at *10-11 (E.D. Cal. Jan. 4, 2012) ("[*Meissl*] has generally been embraced by other district courts in the Ninth Circuit, including the Eastern District of California, as persuasive auvthourity."); *Pugh v. Comm'r of Soc. Sec.,* 2019 WL 3936192, at *4 (E.D. Cal. Aug. 20, 2019) (citing to *Meissl*'s "artfully described" reasoning that a "neat, one-to-one parallel" does not exist between the use of the term "detailed" an RFC finding and the definition of Reasoning Level 2).

15

detailed instructions, it specifically caveats that the instructions would be uninvolved—that is, not a high level of reasoning.").

This Court agrees that "uninvolved" means "non-complex," "simple," or "uncomplicated." This modifier to the term "detailed" must be considered when interpreting the definition of Reasoning Level 2. Thus, the definition of Reasoning Level 2 requires an individual to carry out "detailed" but "non-complex," "simple," or "uncomplicated" instructions. The ALJ's finding was that Plaintiff could perform simple, routine work-related tasks. The requirements of Reasoning Level 2 that an individual be able to carry out "detailed but uninvolved" instructions accordingly do not conflict with the ALJ's RFC finding.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff Matthew J. Meade.

IT IS SO ORDERED.

Dated: **September 27, 2021**          /s/ *Barbara A. McAuliffe*
                                       UNITED STATES MAGISTRATE JUDGE